No. 119.—RICE and WILLIAMS, plaintiffs in error, *vs.* WIL-
LIAM S. JOHNSON, defendant in error.

[1.] A Tax Collector's sale must take place in the county in which the pro-
perty to be sold is.

Ejectment, in Chattooga Superior Court.    Tried before
Judge TRIPPE, March Term, 1856.

This was an action of ejectment, brought by the defendant
in error against the plaintiffs in error, for the recovery of lot
of land No. 195, in the 6th district of the 4th section, in
Chattooga County.

On the trial, plaintiff read in evidence a grant from the
State of Georgia to William Johnson, dated the 3d day of
December, 1835, and closed.

The defendants offered in evidence a deed made by the
Tax Collector of Bibb County on the 3d day of November,
1835, to Francis W. McCarthy, to the lot of land which was
sold on that day under a tax *fi. fa.* against William S. John-
son, at the place of public sales in Bibb County.

To the introduction of this deed, Counsel for plaintiff ob
jected.    The Court sustained the objection, and Counsel for
defendants excepted.

AKIN, for plaintiffs.

ALEXANDER, for defendant.

*By the Court.*—BENNING, J. delivering the opinion.

The objection to the admission of the deed as evidence was
put upon two grounds : 1. That the land, which was situated
in the County of Murray, was sold in the County of Bibb,
and by the Tax Collector of the County of Bibb.    2d. That
the sale took place before the grant had been issued.

The objection was sustained by the Court, but on which, ground, or whether on both grounds, does not appear.

There is no law that expressly mentions the place at which a Tax Collector's sale is to be held—none which does so, even in the case in which the Tax Collector, the tax payer and the property to be sold all belong to the same county. As to the *place* of sales, the Tax Act of 1804 is silent; and so is every other Tax Act, I believe, whether passed before or since the Act of 1804. The parts of the Act of 1804 relied on by the Counsel for the plaintiffs in error, as prescriptive of the place of sale, do not expressly point out any place as the place of sale. Those parts are the 4th section, the 11th section and the 17th section.

By both the eleventh and the seventeenth sections a general power of sale is given to the Tax Collector of the county in which the "default shall happen;" but by the eleventh section, the power seems to be given in reference to property situated in the county in which the default shall happen; and by the seventeenth section, the power is given in reference to property situated in some other county than that in which the default shall happen. By neither section is it said where the sale authorized to be made is to take place.

By the fourth section, the duty is laid on the tax payer to "give in a list" of his "taxable property," "describing, as near as possible, from plans, deeds or other documents, the particular situation of such land, in what county, what particular water course on and what land it adjoins, for whom surveyed and to whom granted."

But in thus imposing this duty, the section is silent as to the place at which a Tax Collector's sale is to come off. (*Cobb's Dig.* 1041.)

Thus, then, the power of sale which is given to the Tax Collector is a general power, without any express restriction, as to the place at which it is to be exercised.

Does it follow that there is no implied restriction on this power of sale as to the place where the sale is to be? Does.

Rice and Williams vs. Johnson.

it follow that the Tax Collector may sell just where he pleases?

If it does, then it also follows that the Tax Collector has power to defeat the very object of the grant of the power;. for, if he may sell where he pleases, he may sell at some place at which the property sold must sell for next to nothing—must sell for less than enough to pay the tax, although it may be worth far more than enough to pay the tax. There are such places as the top of a mountain, the centre of a great swamp, or, indeed, the middle of a thinly settled, poor, inaccessible district of country.

For what is the object of the grant of the power? To a certainty, this: the collection of the tax, and its collection at the least cost to the tax payer, and at the least trouble, delay and risk to the Tax Collector. First in importance is the collection of the tax; next, its collection as cheaply as possible to the tax payer; next, but far least in importance, is its collection with ease to the Tax Collector.

This, then, is the object of the grant of the power of sale to the Tax Collector, and this is the object which the Tax Collector has the power to defeat, if he has the general power of sale without restriction as to the place of sale.

The question, then, becomes this: Is a grant of power, however general, to be so interpreted that it shall give the power to defeat the very object of the grant? And the answer to that question by every one, without dispute, I suppose, will be no.

This grant of the power of sale to the Tax Collector, then, although in terms general, is to be restricted as to the place of the sale to some extent—is to be restricted to this extent: that the sale is to be held at that place at which, if it is held, there will be the best chance for the sale's accomplishing the object of the grant.

What place is that? The place where the property to be sold is situated, or some place in the vicinity of that, as the court-house of the county in which that place is. That is

the place at which the property, in the great majority of cases, will fetch the best price.   And whenever the property fetches the best price the two most important objects of the grant of the power of sale will be best subserved—the collection of the tax, and its collection at the least cost to the tax payer.   It may be assumed as generally true, that all property will sell best where it is best known.   And in general, all property is best known by its neighbors.   To sell best, then, the property must be sold at a point easy of access to them.

And it may be doubted whether the other object, the ease of the Tax Collector, will not also be best subserved by confining the sale to the place where the property is situated. In the case of personal property, there can be no doubt that it will.   If the Tax Collector had to transport slaves, animals, cotton, provisions, furniture, from one county to another to be brought to sale, he would find the trouble, the loss of time, the risk of damage to the property, something serious, even if he could put the expenses of transport on the tax payer; and that is a question.

And even in the case of land the Tax Collector will gain title in point of ease, by being allowed to sell it in his own county, if he has to go to the county where the land lies to put the purchaser in possession.   It may be doubted, however, whether he has to do this, although the Act speaks of "a distress and sale," and of "execution levied," as the mode of bringing about a sale.   (*Acts of* 1804–'55, §§11, 17.)   And both a distress and a levy imply a seizure, and if the land has been *seized* by the Collector, it would seem that he ought to deliver it to the purchaser as much as he ought if it were personalty.

But, admitting that this one of the objects which the grant of the power had in view, would not be so well accomplished by confining the place of the sale to the county where the property lies, as it would be by letting the Tax Collector sell in his own county, or wherever he pleased; still, this is an object far inferior in importance to the other two—the col-

lection of the tax and its collection at the least cost to the tax payer; and as those two would be best accomplished by so confining the place of sale, we may safely say that the object of the grant, considered in all its parts, would be best accomplished by so confining the place of sale.

If this be a correct conclusion, the result is, that we must hold the general power of sale given to the Tax Collector, as so far restricted in reference to the place at which the sale is to be held, that it does not authorize a sale out of the county in which the property is situated.

There are other premises from which support may be drawn for this conclusion.

That it was the legislative intention thus to restrict this power, may be inferred, with greater or less force, from this: that in cases similar to this case, but cases to which the Legislature had its attention more particularly drawn; and therefore, in respect to which it would be more likely to take pains to *express* its whole mind, the Legislature has said, that the sale shall take place in the county in which the property is situated. This it has said with respect to the property of defendants in execution—the property of testators—the property of intestates—the property of orphans. The effect of the statutes on the subject of executors', administrators' and guardians' sales, is to cause such sales, in general, to take place in the county in which the property to be sold is situated.

This the Legislature has said, at least of late years, with respect to its own land, whenever it has exposed that land to sale. And this, in 1852, the Legislature said, with respect to the very property in question, in one case; i. e. in respect to the property of defaulting tax payers, in the case in which the Tax Collector chooses to issue a *fi. fa.* against the defaulter, for by an Act of that year, the Legislature declared that such *fi. fa.* was to be directed "to all and singular the Sheriffs and Constables of this State." And the effect of those words, when used in other Statutes, has been, to con-

fine the sale to the county in which the property to be sold was situated.

In all these cases, then—these cases of so much importance—the Legislature have thought, that requiring the sale. to take place in the county in which the property might be situated, would be the best way to accomplish the object of the sale. And what was that object ? One entirely similar to that to be accomplished by the sale of a defaulting tax payer's property. It was an object which could best be accomplished only by such a sale of the property as should make the property bring the best price at the least cost.

That the Legislature itself, then, thinks that restricting the Tax Collector's power of sale to the county in which the tax payer's property is situated, is the best mode of accomplishing the object of such a sale, may be inferred from its action in these cases.

And there is another thing from which that inference is to be strengthened. In the case of a defaulter's property lying or being in the county in which the defaulter resides, the practice, everywhere, has ever been to sell it in the county in which it is situated. The power of the Tax Collector is, as we have seen, as great to sell such property out of its county, as it is to sell, out of its county, the property of a defaulter that is situated out of the county in which he resides. And this practice must be evidence, not only that all Tax Collectors have thought the grant of the power of sale, in this case, was to be interpreted as restricted to the county in which such defaulter's property was situated, but evidence that the Legislature have thought so too; for if the Legislature had not thought so, they would have passed a law to authorize a change of the practice. The evil of so restricting the power, if that were an evil, would have become apparent in the course of fifty years and more, during which the practice has prevailed.

The conclusion, then, to which we come is, that it was the intention of the Legislature to restrict the exercise of the

,power of sale, given to Tax Collectors, to the County in which the property to be sold might be situated.

And therefore, we think that the decision of the Court rejecting the Tax Collector's deed when offered in evidence, was right.

And the decision being right by reason of the ground already considered, it is unnecessary to consider the other ground, especially as it, also, is a ground not without difficulty.