WILLIAM SOLOMON, plaintiff in error, v. THE COMMISSION-
ERS OF CARTERSVILLE, defendants in error.

(Atlanta, June Term, 1870.)

TAXATION—AFFIDAVIT OF ILLEGALITY—FAILURE TO
CONFORM TO CONSTITUTION IN PASSING BILLS*—LONG
CONTINUED PRACTICE.†—The Commissioners of the town of
Cartersville, assessed a tax on sixty-four acres of land, as the prop-
erty of S., which was used for agricultural purposes only, and issued
an execution therefor, to which S. made an affidavit of illegality, al-
leging amongst other things, that the land so taxed was not within
the corporate limits of the town of Cartersville. This affidavit of
illegality was overruled by the Board of Commissioners, they claim-
ing the right to tax the property in question under an alleged Act
of the General Assembly, passed in the year 1869, extending the cor-
porate limits of said town. The case was brought up to the Superior
Court by writ of certiorari, and on the hearing thereof, the certiorari
was dismissed, and the decision of the Commissioners was sustained.
On the hearing the case in this Court, the original Act on file in
the Secretary-of-State's office, under which the right to tax the
property is claimed, was produced, from which it appears that the
bill passed both Houses of the General Assembly on the 16th day
of March, 1869, and was approved by the Governor on the 29th of
May, 1869, in the following words and figures, (to-wit.): "Approved
May 26th, 1869, Rufus B. Bullock, Governor, subject to the action of
Council of Cartersville." It appears from the published Journals of
the General Assembly, that that body adjourned sine die on the 18th
day of March, 1869. The second Section of the 4th Article of the
Constitution declares, that the Governor shall have the revision of
all bills passed by both Houses before the same shall become laws,
and if any bill should not be returned by the Governor within five
days (Sunday excepted) after it has been presented to him, the same
shall be a law, unless the General Assembly, by their adjournment,
shall prevent its return:

*Held,* That if this was an original question, independent of any con-

*FAILURE TO CONFORM TO CONSTITUTION IN PASSING
BILLS—NO BINDING EFFECT.—In the case of Gormley v. Tay-
lor, 44 Ga. 115, Warner, J., dissenting, said: "If the constitution of
the state is not to be observed and regarded in the enactment of laws
for the government of the people thereof, then there is no practical
use or benefit resulting to them in having a constitution, limiting and
defining the powers and duties of their agents created by it. * * *
This court in Solomon v. Cartersville, 41 Ga. 157, unanimously decided
that an act of the general assembly, which was not signed by the
governor within the time prescribed by the constitution, was not a
binding law. In that case this court said: 'The constitution of the
state is the fundamental law of the state, and if bills introduced in
the general assembly are not passed and approved in accordance with
the requirements and provisions of that constitution, they have no
binding force or authority upon the people thereof as laws.' "

†DETERMINATION OF MEANING OF CONSTITUTION—
LONG CONTINUED PRACTICE.—"In determining the meaning
of words in a constitution which are doubtful, ambiguous or equivo-
cal, long continued practice of co-ordinate departments of the gov-
ernment may well be resorted to by the judicial department as an
aid in determining what is the true meaning of words contained in
the instrument." Epping v. Columbus, 117 Ga. 273, 43 S. E. Rep. 803.

See also, the principal case cited to the same proposition in Macon,
etc., R. Co. v. Little, 45 Ga. 379; Miller v. Wilson, 60 Ga. 508; Park
v. Candler, 114 Ga. 501, 40 S. E. Rep. 523.

struction heretofore given by the Executive Department of the State Government, this Court would be inclined to hold that the Governor, under *the Constitution, could not approve and sign any bill after the adjournment of the General Assembly; but upon looking into the past history of our Legislation, we find that it has been the practice for many years, for the Governor to take five days after the adjournment of the General Assembly for the revision of bills, and to sign them within that time, but not afterwards, that a large number of the most important Acts now upon the statute books of the State, have been so approved and signed. This usage and practice of the Executive Department of the State Government should not now be disturbed or set aside.

*Held* also, That, inasmuch as the bill under the authority of which the Commissioners of the town of Cartersville claim the right to tax the property of S., was not approved and signed by the Governor until more than two months had elapsed from the day of the adjournment of the General Assembly, the same never became a law of the State, and did not confer any authority as such, on the Commissioners of the town of Cartersville, to assess and collect the tax on the property of S., as specified and set forth in the record.

Tax. Corporations. Constitutional Law. Before Judge Parrott. Bartow Superior Court. April Term, 1870.

On the 16th of March, 1869, a House bill amending the several Acts incorporating the town of Cartersville, was read the third time and passed in the Senate. On the 18th of March, the General Assembly adjourned, sine die. Section 1st of said Act extended the corporate limits. Section 2d empowered the Board of Commissioners to fix the price of license to retail liquors, provided it was not to exceed $300 00 per annum, and to levy a "tax on all real and personal property within the corporate limits of said town as they may think proper," provided it did not exceed one-half of one per cent. Section 3d allowed a fine of $10 00 for selling liquors without license. Section 4th enacted that no one who had not paid his town taxes and fines, and worked on its streets, as required, might be a Commissioner or vote for Commissioners. Section 5 allowed an extra tax when deemed necessary, to buy a fire engine and appurtenances. Section 6th provided for compelling the citizens to work its streets or pay a street tax. Section 7th authorized the Commissioners, or a majority of them, to issue the bonds of the town for $25,000 00, with interest, payable semi-annually, redeemable in ten years, provided a majority of the citizens favored it; the *citizens were to vote as to how much to issue, and how to invest the bonds. Section 8th allowed the Commissioners, or a majority of them, to invest said bonds in the stock of The Cartersville and Van Wert Railroad, or in such other manner as the majority of the voters should decide at such election. Section 9th empowered the Commissioners to raise a tax to redeem said bonds, if issued. Section 10th repealed conflicting laws.

On the 25th of May, 1869, at a called meeting of the Board of Commissioners, they resolved that, because said 4th section "is considered to be in conflict with the Constitution of the State of Georgia, and without benefit to said town, and

repulsive to the honest sentiments of said town," they would not enforce said section, and that they would instruct the representatives of said county to have it repealed. A certified copy of this resolution, dated the 25th of May, 1869, is attached to the original Act, which was used here in the argument. The approval of the Act was as follows : "Approved May 26th, 1869, Rufus B. Bullock, Governor, subject to the action of Council of Cartersville."

The extension of the corporate limits took in certain sixty-four acres of land belonging to Solomon. He failing to pay the taxes said to be due to said town on said land, a tax fi. fa. was levied upon it, and it was advertised to be sold on the 25th of September, 1869. Solomon filed his affidavit that said fi. fa. was proceeding illegally, because the land was not within the corporate limits of Cartersville, never was claimed to be in before said Act was approved, which Act is void because the General Assembly adjourned sine die on the 18th of March, 1869, and said approval was too late; because said Act was never promulgated nor published; because there is no public road or street on any part of said land, no one lives or has lived on it, no house is or has been on it for years past, the land is used for agricultural purposes alone, it is no expense to Cartersville and is not even laid off in lots, and the General Assembly can not Constitutionally so extend said limits as to make said land liable to said tax; because the sale is advertized to occur on a day *other than the first Tuesday in the month, the day fixed for sheriff's sales, and that, too, without four weeks advertisement.

The Board of Commissioners dismissed the affidavits of illegality. Thereupon Solomon's counsel sued out a certiorari, averring that the decision of the Commissioners was erroneous on each of said grounds. Upon hearing the certiorari, Judge Parrott affirmed the decision of the Commissioners, and that is assigned as error.

Warren Akin, for plaintiff in error.

A. Johnson, by D. A. Walker, for defendant, said the Act was law without the Governor's approval, Cons't. Ga., Art. 4, Sec. 2, Par. 6. Cons't. U. S., Art. 1, Sec. 7, Par. 2. The sale might be when the Commissioners might direct : Acts 1850, 104; 1854, 234; 1856, 370; 1859, 143.

WARNER, J.

The error assigned to the judgment of the Court below, is the dismissal of the certiorari and affirming the decision of the Commissioners of the town of Cartersville. The second section of the 4th article of the Constitution of this State, declares that the Governor shall have the revision of all bills passed by both Houses, before the same shall become laws, and if any bill should not be returned by the Governor within

five days (Sunday excepted,) after it has been presented to him, the same shall be a law, unless the General Assembly, by their adjournment, shall prevent its return. The original Act, on file in the office of the Secretary of State, under which the right to tax the property of Solomon is claimed, was produced, from which it appears that the bill passed both Houses of the General Assembly, on the 16th day of March, 1869, and was approved by the Governor, on the 29th day of May, in the following words and figures, (to-wit:) "Approved, May 26th, 1869. Rufus B. Bullock, Governor, subject to the action of Council of Cartersville." It also appears from the published journals of the General Assembly, *that that body adjourned sine die on the 18th day of March, 1869, more than two months prior to the date of the Governor's approval of the bill.

If this was an original question, independent of any construction heretofore given by the Executive Department of the State Government, to this clause of the Constitution, we should be inclined to hold, that the Governor could not approve and sign any bill after the adjournment of the General Assembly; but on looking into the past history of our legislation, we find that it has been the practice for many years, for the Governor to take five days after the adjournment of the General Assembly, for the revision of bills passed by that body, and to approve and sign the same within that time, but not afterwards, and that a large number of the most important Acts now upon the statute books of the State have been so approved and signed, which usage and practice of the Executive Department of the State Government, should not now, in our judgment, be disturbed or set aside. But this bill passed by the General Assembly, under the authority of which, the Commissioners of the town of Cartersville claim the legal right to tax the property of Solomon, was not approved and signed by the Governor, until more than two months had elapsed from the day of the adjournment of the General Assembly, and never became a law of the State, and did not confer any lawful authority as such, on the Commissioners of the town of Cartersville, to assess and collect the tax on the property of Solomon, as specified and set forth in the record.

The Constitution of the State is the fundamental law of the State, and if bills introduced into the General Assembly are not passed and approved in accordance with the requirements and provisions of that Constitution, they have no binding force or authority upon the people thereof, as laws.

Let the judgment of the Court below be reversed.