MILLER *vs.* WILSON, tax receiver, *et al.*

[This case was argued at the last term and decision reserved.]

In the absence of explicit language clearly expressing the will of the legislature to tax the bonds of the state, the general assembly will not be presumed to have passed upon so grave a question of public policy from the use of general words, especially when like words

have been employed in former acts, and the executive department has never construed them to embrace state bonds: therefore, the tax act of 1877, empowering and authorizing "the governor, with the assistance of the comptroller general, to assess and levy a tax upon the taxable property of the state," cannot be legally construed to authorize a tax upon the bonds of the state.

Tax. Laws. Before Judge POTTLE. Richmond County. At Chambers. June 28, 1877.

Reported in the opinion.

FRANK H. MILLER, by R. H. CLARK, for plaintiff in error.

R. N. ELY, attorney general; WILLIAM M. REESE, for defendant.

·JACKSON, Judge.

This was a bill filed by the complainant against the collector of taxes and the receiver of tax returns of the county of Richmond, asking for an injunction to restrain the collection of state and county taxes on the bonds of the state. The chancellor refused the injunction except as to the tax levied for school purposes, and the complainant excepted because the receiver and collector were not restrained from collecting all the taxes on the bonds of the state in his hands.

The great question argued before us was the power of the state to tax her own obligations under the constitution of the United States, and the power of the general assembly of the state to do so under her own constitution as well as that of the United States; and the case was held up from the last term, when it was argued, mainly for the purpose of a full investigation of that question.

After fully considering the facts made by the bill and the law imposing taxes upon the people, under which alone, if at all, the return and collection of this tax, required by the instructions of the comptroller general, can be held legal, we have come to the conclusion that no such tax has

been imposed by the general assembly, and that, therefore, the question of its constitutional power to impose such a tax upon the state's own obligations is not now necessarily before us, and need not be considered and determined in this opinion.

When the general assembly shall have enacted a law undoubtedly designed to tax the bonds of the state, and clearly expressing such design, it will be the duty of this court, upon a proper case made, to pass upon its authority to do so; until then it is the better and wiser course, we think, to leave the general assembly free to act, uninfluenced by any prejudgment of its action by the judicial department of the government.

By the act of 1877, p. 121, the governor, with the assistance of the comptroller general, is authorized and empowered to assess and levy a tax upon the taxable property of the state, not to exceed four-tenths of one per cent.; and then follows a long list of specific taxes, but the bonds due by the state are nowhere mentioned in the act.

In the case of the *City Council of Augusta vs. Dunbar,* 50 *Ga.,* 387, this court held that the state ought not to be presumed to have granted to a municipal corporation, without plain words showing the grant, a power by taxation to depreciate the state securities, when to do so would be to " do what the state itself ought not to be presumed to have done in the absence of clear language so declaring."

The principle thus announced *unanimously* in that case by this court, will control the judgment to be rendered now in this case. The bonds of the state are nowhere mentioned in the act. The words are " taxable property;" but the same words identically are used in former acts, certainly ever since 1874, and no attempt has been made by the executive department of the government to construe those acts so using the same words, as embracing the bonds of the state; and the usage of the executive department may be invoked properly and legally to throw light upon words

32

used in the statutes of the state.   See 20th *Ga.*, 644 ; 41 *Ga.*, 157.

These cases show that the practice in the executive department was used to construe the statute law.

In other acts imposing taxes words as broad have been used by the general assembly, and yet the tax has not been construed to embrace the securities of the state.

It is a grave question of public policy whether it should be done, conceding the power to do the thing to reside in the general assembly ; and when done, it should be done with much deliberation and in unmistakable language, and when the legislative mind, whose peculiar province it is to determine such a question of public interest, affecting, it may be, the public credit, shall have indicated it to be the policy of the state to tax her own securities, her pledges to pay so much principal at the expiration of a certain time to the holders of those securities, with annual or semi-annual interest, in the shape of coupons thereon, it will be time enough for the courts to consider the act in the light of the constitutions of the country, state and federal.

No point has been made upon the question of judicial interference with the collection of taxes under section 3668 of the Code ; and inasmuch as this case involves no question of *fact* at all, but is one of pure law, this court will not itself, on its own mere motion, decline to exercise jurisdiction.   Indeed it might well be doubted whether under the constitution, either of 1868 or 1877, it could decline to pass upon a question of pure law.

Inasmuch, therefore, as it is not clear that the legislature intended to tax the state bonds, from the language employed, the judgment is reversed, and the chancellor is directed to grant the prayer for injunction, as asked in the bill of complaint.

Judgment reversed.