The Mayor, etc., of Macon *vs.* Jones.

## The Mayor, etc., of Macon *vs.* Jones.

1. The grant of power in the charter of a municipal corporation " to tax all property, real and personal, within the corporate limits of the city," will not be construed to include the taxing of its own bonds in the absence of express authority for that purpose.
(*a*.) If such express authority were given, would it be valid ? *Quære.*
2. There was no abuse of discretion in granting an injunction in this case.

Municipal Corporations. Tax. Bonds. Laws. Injunction. Before Judge SIMMONS. Bibb County. At Chambers. April 30th, 1881.

On March 29th, 1881, the mayor and council of the city of Macon passed the following preamble and resolution:

"Whereas, it has become known to this body that James M. Jones, a resident of this city, has, during the years 1870–71–72–73–74–75–76–77–78–79–80 and 1881, been the owner of $14,000.00 of annuity bonds of the city of Macon, which have not been returned for taxes by him during any of the years named ; and whereas, said bonds were during the years named of fair market value as follows : 1870 and 1871, 80 cents on the dollar; 1872 and 1873, 75 cents on the dollar; 1874–5, 80 cents on the dollar; 1876–7, 90 cents on the dollar, 1878–9, 95 cents on the dollar ; and for the years 1880–1, par ; and whereas, this mayor and council have by general ordinance levied, during the years named, taxes on all moneys, bonds, notes and securities within the limits of the city on the 1st of January in each year at the rate for each year as follows, viz : for the years 1870–71, one per cent.; 1872, one and one half per cent. ; 1873–74, one per cent. ; 1875, one and one quarter per cent.; 1876–77–78–79, one per cent.; and for the years 1880–81, one and one quarter per cent.; therefore

Resolved, That the treasurer be instructed to issue *fi. fas.* against said James M. Jones for delinquent taxes on his said annuity bonds at their fair market value, for the years named, at the rate per cent. for each year as above set out in the preamble to this resolution."

The eleven *fi. fas* were issued by the city treasurer on the 31st of March, in accordance with the resolution, and on the 1st of April levied by the city marshal on a house

and lot on College street, in said city, as the property of the defendant, and duly advertised for sale.

On April 11th, James M. Jones filed his bill to enjoin the levy and sale, making his case substantially as follows: Admitted the ownership of the bonds as set out in the resolution, recites the passage of the resolution, the issuance of the *fi. fas*, and their levy, and says they are wholly illegal ; denies that the tax is due or authorized by law ; sets out the circumstances under which he bought his bonds, and says the mayor who negotiated similar bonds once told him they were non-taxable ; states that the mayor and council had never before demanded taxes from any one on such bonds although they knew many of them were held in Macon ; that he purchased and now holds his bonds on the faith of their non-taxability ; says the mayor and council are now estopped from claiming taxes on these bonds ; claims he has paid for all the years named all the taxes demanded of him by the city ; charges that the object of the attempt to collect the tax is to force him to fund his said bonds under a scheme for funding the debt of the city ; sets up the unconstitutionality of the funding bill, and other matter unnecessary to state. To this bill was attached a copy of one of the bonds, a copy of the resolution, copies of the *fi. fas.*, and a copy of the advertisement.

To this bill the city of Macon demurred, and made answer substantially as follows: That there was no equity ; that the bill was multifarious, and that complainant had complete legal remedy; admitted the direction to the city treasurer, the issuance of *fi. fas.*, levy and advertisement of the defendant's property ; denied they were illegal, and said the city had levied the taxes annually by general ordinance for the years and at the per cent. named for the years named in the resolution, except the year 1870, for which year no tax had been levied on money, bonds securities, etc. and abandoning the claim under the *fi. fa.* for that year ; but for the other years they say the taxes

The Mayor, etc., of Macon *vs.* Jones.

were duly, properly and legally levied and are unpaid, and to levy which the mayor and council were fully authorized and empowered under their charter, both under the act of 27th December, 1847, and by the act of 1871, December 11th, under both which acts they were given " power and authority to levy and collect a tax upon all property, real and personal, within the limits of the city." They say whatever may have been said by a mayor in negotiating another and a different series of bonds than those sought to be taxed fourteen years before the issue of these, could have nothing whatever to do with this issue, but they say any such statement was *ultra vires*, even if made, and binds no council now ; that even if the council had sought to confer upon him the power to make this promise, they could not delegate to the mayor the right to grant immunity from taxation any more than they can delegate the power to tax ; that the fact that other councils have not collected the taxes due on city bonds does not bind them now. The taxes were regularly and legally levied ; but further, they say, failure to collect from any or all others cannot be set up by complainant against the payment of his taxes ; declare their purpose to enforce the payment of taxes on all bonds of the city which are held and owned within the corporate limits, except such as are by law, or the face of the contract, exempt. They say, whatever may have been the knowledge of others as to the ownership of city bonds, this council knows not, because the bonds and coupons are transferable by delivery and the presentation of one or more of either for payment is no evidence of ownership.

To the answer were attached as exhibits, extracts from the general tax ordinances of the city for the years named, in the shape of an affidavit by the clerk of council.

Various affidavits were introduced, not material to be stated here. The chancellor granted the injunction, and defendants excepted.

v 67—32

S. H. JEMISON, for plaintiffs in error.

W. B. HILL, for defendant.

JACKSON, Chief Justice.

Pretermitting the question whether a municipality can tax its own bonds, which has not been decided by the supreme court of the United States on the naked issue that it impairs the obligation of the contract (96 U. S. R., p. 432), we are of the opinion that this case is virtually controlled by the ruling of this court in the case of *Miller vs. Wilson*, tax-collector, *et al.*, 60 *Ga.*, 505. In that case it was held that the words "taxable property of the state," did not embrace the bonds of the state in an act levying a tax on the people of the state ; because it was a grave question of public policy whether the state ought to tax her own promises to pay. Is it not equally so, whether a subordinate branch of government ought to tax its promises to pay; and if the words "taxable property" in the state's own tax act will not embrace its bonds, will similar words in a charter it grants to a municipality to exercise the great power of taxation, enable that municipality to tax its bonds? The words in the Macon charter are "to tax all property, real and personal, within the corporate limits of the city." These words are not broader than "all taxable property," and cannot open a wider field for the exercise of power.

In the *City Council of Augusta vs. Dunbar*, 50 *Ga.*, 387, it is held that without express authority and explicit language, it will not be presumed that the state under general words granted Augusta the power to tax state bonds, because the state would hardly do right to tax her own bonds, and hence would not grant another the power to do what it would not be right to do herself. The authority must be explicit, it is there held, to authorize the city to do in respect to state bonds what the state ought not

to do. If so, is it not equally clear that the state should not be presumed to have granted to a municipality power to act in regard to the municipality's bonds differently from the manner in which it would be wrong for itself to act in regard to its, the state's, bonds? If the state thought it wrong to tax debts she owed, would she authorize another to tax the debts it owed? Would she not require her subordinates to stand on the same plane of morality she placed herself upon? We think so.

Therefore words equivalent to those she used in her tax act, construed in 60 *Ga.*, 505, not to authorize a tax on her bonds, will not be construed to authorize a tax on bonds of the city of Macon, when used in the grant to that city to tax property therein.

Moreover, in the case in 96 U. S. *supra*, it is held that the payment of the debt or interest must be made before the power to tax can be exercised. The record in this case shows that neither the one nor the other has been done.

Further, we do not see clearly the fairness of enforcing a tax ordinance of former councils of the city, when those councils did not enforce it themselves, upon one citizen to the exclusion of others, especially,—and more especially when another has been relieved by council from a like imposition. Nor do we see how a debtor can avoid, very well, the imputation of a purpose to impair his contract, when he levies or orders the enforcement of stale taxes due, if at all, for years in the past, in order to constrain his creditor to make another contract, less valuable and at lower rates of interest, and not so well secured as that which the creditor now holds.

In view of all the facts set out in this record, we cannot say that the chancellor, in the exercise of the powers which the great principles of equity place in his hands to protect the weak against the strong, and shield the citizen against the corporate power of the city, erred in the grant of this injunction, and therefore the judgment is affirmed.

Judgment affirmed.