A08A0067. GEORGIA DEPARTMENT OF COMMUNITY
HEALTH et al. v. MEDDERS.
(664 SE2d 832)

BARNES, Chief Judge.

The Georgia Department of Community Health and its Commissioner (collectively, "DCH")[1] appeal from a superior court order reversing a final agency decision regarding Gracie Medders' Medicaid benefits. For reasons that follow, we affirm in part and reverse in part.

The underlying facts are not in dispute. Medders' husband died on November 24, 2002, leaving certain real and personal property to Medders through his Last Will and Testament. In May 2003, however, Medders filed a renunciation and disclaimer pursuant to

---

[3] OCGA § 15-19-51 (a) (3), (4).

[4] See, e.g., *Marks v. State*, 280 Ga. 70, 73 (1) (b) (623 SE2d 504) (2005); *Gaines v. State*, 177 Ga. App. 795, 801 (3) (341 SE2d 252) (1986).

[1] The Department of Human Resources, Division of Family and Children Services ("DFCS"), is also an appellant, apparently because DFCS administers the Medicaid program for DCH and determines program eligibility based on the DCH policy manual. For ease of discussion, we will refer to all of the appellants as "DCH."

OCGA § 53-1-20, thereby "irrevocably renounc[ing] and disclaim-[ing] 100% of her interest" under the will.

Less than three years later, Medders, who lives in a nursing home facility, applied for Medicaid vendor benefits to assist in the cost of her nursing home care.[2] DCH denied her claim after applying a "transfer-of-resource" penalty. Medders sought review of this denial under OCGA § 49-4-153 (b) (1), and an administrative law judge ("ALJ") held a hearing in August 2006.

Following the hearing, the ALJ affirmed DCH's decision. Medders requested further agency review, but DCH took no additional action, and the ALJ's ruling became the final agency decision by operation of law. See OCGA § 49-4-153 (b) (1). Medders then petitioned the superior court for judicial review pursuant to OCGA §§ 49-4-153 (c) and 50-13-19. The superior court reversed the agency's decision, and we granted DCH's application for discretionary appeal.

In addressing this appeal, we are mindful of the narrow scope of judicial review applicable to administrative agency matters. A court cannot "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." OCGA § 50-13-19 (h). See also OCGA § 49-4-153 (c) (standard of review set forth in OCGA § 50-13-19 applies to denied requests for medical assistance). And although a court may reverse or modify an agency decision under certain circumstances, those circumstances are limited to instances involving (1) a constitutional or statutory violation; (2) an action that exceeds the agency's statutory authority; (3) unlawful procedure; (4) legal error; (5) clear error, given the record evidence as a whole; or (6) arbitrary or capricious agency conduct, or activity characterized by an abuse or clearly unwarranted use of discretion. OCGA § 50-13-19 (h).

On appeal, we must defer to the administrative agency's interpretation of applicable statutes and administrative rules, and the agency's final decision is also entitled to deference. *Dept. of Community Health v. Gwinnett Hosp. System*, 262 Ga. App. 879, 882 (586 SE2d 762) (2003). As we have noted:

> Agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the

---

[2] Medicaid provides two kinds of assistance, one for medical services, which Medders receives, and one supplementing the claimant's income for costs of care such as nursing home bills, which DCH denied.

> legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary. Review overbroad in scope would have the effect of substituting the judgment of a judge or jury for that of the agency, thereby nullifying the benefits of legislative delegation to a specialized body.

(Citation and punctuation omitted.) Id.

1. The Medicaid program provides assistance to needy individuals "whose income and resources are insufficient to meet the costs of necessary care and services." *Atkins v. Rivera*, 477 U. S. 154, 156 (106 SC 2456, 91 LE2d 131) (1986). The federal government shares the cost of the Medicaid program with participating states, which must comply with federal Medicaid requirements and regulations. Id. Those requirements include restrictions on asset disposition by nursing home patients seeking Medicaid coverage. Under 42 USC § 1396p (c) (1) (A) and (B) (i), a nursing home resident who disposes of assets for less than fair market value during the 36 months (the "look-back period") before applying for Medicaid is ineligible for cost-of-care benefits.[3] The term "assets" extends to income or resources the patient is entitled to receive, but does not receive because of the patient's own action. 42 USC § 1396p (h) (1).

To comply with federal Medicaid requirements, Georgia developed a state plan for medical assistance and authorized DCH to "establish such rules and regulations as may be necessary or desirable in order to execute the state plan and to receive the maximum amount of federal financial participation available." OCGA § 49-4-142 (a). DCH thus promulgated a policy manual for the Medicaid program. Among other things, the manual establishes a transfer-of-resource penalty for a Medicaid applicant who "gives away or sells a resource for less than [current market value], or *refuses an inheritance*, during the 36 month look back period or anytime thereafter." (Emphasis supplied.)

Concluding that Medders refused an inheritance by filing her renunciation and disclaimer in May 2003, DCH applied a transfer-of-resource penalty when she applied for cost-of-care benefits less than three years later. The penalty — which resulted in a benefits denial for a certain period of time — was upheld through the administrative process. The superior court, however, reversed after determining that the renunciation was not a disposition or transfer of assets.

---

[3] The look-back period was lengthened to 60 months by the Deficit Reduction Act of 2005, which was enacted on February 8, 2006.

Central to the superior court's finding is language in OCGA § 53-1-20, which permits the beneficiary of a will to renounce his or her interest in estate property. Under that statute, "a renunciation shall cause the renounced property to pass as if the person renouncing had predeceased the decedent." OCGA § 53-1-20 (f) (1). Reasoning that Medders never received an asset through her husband's will that she could " 'transfer,' 'refuse,' or 'dispose of,' " the superior court concluded that the renunciation should not disqualify her.

The legislature, however, charged DCH with developing and implementing the policies necessary to meet Medicaid requirements, including the federal mandate that applicants who dispose of financial resources for less than fair market value be penalized. Interpreting this mandate, DCH determined that a transfer-of-resource penalty applies to claimants who refuse an inheritance. Although such individuals may never receive estate property, they were certainly *entitled* to receive the property until, through their own action, they gave up or renounced the property interest.

We must defer to the agency's reasonable conclusion that, under applicable Medicaid regulations, a renounced inheritance constitutes an asset that has been disposed of or given away, triggering the transfer-of-resource penalty. Undoubtedly, a Medicaid claimant may decline an inheritance under Georgia law. But the renunciation statute does not insulate that choice from the application of Medicaid's eligibility regulations. To find otherwise would undermine a primary purpose of the Medicaid program — to provide medical assistance to *financially needy* individuals. Accordingly, the superior court erred in reversing the agency's final decision on this basis.

The ALJ erred, however, in finding as fact that Medders renounced resources valued at $590,856, because no evidence in the record establishes that fact. In its appellate brief, DCH cites to the ALJ's decision to support this fact. The record contains no copy of the initial DCH decision. The DCH witness who testified at the administrative hearing was not the caseworker who made the decision to deny Medders' application. When she said the family had provided a list of resources totaling $590,856, Medders' attorney said that amount was the value of the entire estate, but Medders was entitled to and renounced only half of that. The witness did not know whether DCH used the figure $590,856 or half of that amount, and nothing in the record establishes which sum was applied or the length of the penalty assessed. Included in the record is a document, apparently faxed to DCH, dated December 31, 2002 and including the husband's name, address, and an itemized list of assets totaling $590,856. The document is not authenticated or even described.

This issue — the amount of the transfer — is critical to a determination of the length of the penalty, because the larger the

amount, the longer the penalty. The penalty is determined by dividing the monthly cost of the nursing home payment into the total amount transferred within the previous 36 months. For example, if the amount transferred was $300,000 and the monthly payment would be $3,000, the applicant is penalized for 100 months, because that is how long the $300,000 would have lasted if applied to the monthly cost. Because no evidence supports the ALJ's finding regarding the amount Medders transferred or the amount DCH used to calculate Medders' penalty, we reverse that portion of the decision.

2. The superior court also determined that, even if the renunciation constituted an asset disposal or transfer, that transfer occurred outside of the 36-month look-back period and thus should not have resulted in a penalty. Without dispute, Medders filed her renunciation in May 2003, well within the look-back period. But the superior court found that the renunciation related back to the November 2002 death of her husband, removing it from the penalty period.

Once again, the superior court based its ruling on the renunciation statute, which provides that a renunciation "relates back for all purposes to the . . . date of death of the decedent." OCGA § 53-1-20 (g) (1). According to the superior court, regardless of when Medders actually filed her renunciation, it must be treated for Medicaid purposes as though made or filed the day her husband died. We disagree.

The relation-back language in OCGA § 53-1-20 (g) creates the legal fiction necessary to allow estate property to "pass as if the person renouncing had predeceased the decedent." OCGA § 53-1-20 (f) (1); see *Hamrick v. Bonner*, 182 Ga. App. 76, 78 (4) (354 SE2d 687) (1987) (noting that relation-back effect of a marital annulment is a legal fiction); *In re Peery*, 40 B. R. 811, 815 (M. D. Tenn. 1984) (deeming similar relation-back language in Tennessee's renunciation statute "a legal fiction"). Certainly, the effect of the renunciation relates back to the date of death. The fact remains, however, that Medders filed the renunciation in May 2003. Nothing in OCGA § 53-1-20 requires DCH to ignore this date in applying its transfer-of-resource policies.

Furthermore, the legislature placed its own deadline on renunciations, requiring those who wish to decline an inheritance to renounce within a nine-month period. OCGA § 53-1-20 (d). If, as the superior court found, a renunciation must be treated as made or filed on the date the decedent died, this limitation would be meaningless, as heirs could renounce at any point and argue that the renunciation date "related back" to the time of death. Construing OCGA § 53-1-20 in this way violates a basic rule of statutory construction — that all portions of a statute must be given meaning and effect. See

*Graham v. McKesson Information Solutions*, 279 Ga. App. 364, 366 (631 SE2d 424) (2006) ("[A]ppellate courts must construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless.") (citation and punctuation omitted).

Medders refused her inheritance in May 2003, within the 36-month look-back period. Because DCH properly found her subject to a transfer-of-resource penalty, the superior court erred in reversing the agency's denial of benefits.

3. Finally, the record shows that the superior court reversed DCH's decision regarding estate recovery under OCGA § 49-4-147.1. This provision allows DCH to "make claim against the estate of a Medicaid recipient for the amount of any medical assistance payments made on such person's behalf by the department." OCGA § 49-4-147.1 (a). At issue is Medders' estate, not the estate of her husband.

All parties agree that any finding regarding estate recovery in this matter is premature because Medders is alive. Nevertheless, the ALJ determined that "estate recovery may be pursued." It is unclear whether the ALJ meant for estate recovery to commence immediately. Without dispute, however, the issues raised at the administrative hearing did not involve OCGA § 49-4-147.1 (a), and neither party discussed estate recovery.

The superior court found — and DCH concedes — that the agency's final decision was erroneous to the extent it deemed estate recovery appropriate at this time. But the superior court's analysis did not end there. It further concluded that DCH is barred from *ever* pursuing Medders' estate to recover Medicaid payments. DCH now challenges this ruling on appeal.

Trying to support the superior court's broad ruling, Medders contends that DCH raised an estate recovery issue by inserting an estate recovery form into the record, then failed to meet the proof requirements of OCGA § 49-4-147.1. Everyone agrees, however, that estate recovery was not a disputed issue at the hearing, and our review of the hearing transcript reveals no indication that the parties intended or consented to litigating the matter. See *Southern Discount Co. v. Kirkland*, 181 Ga. App. 263, 267 (3) (351 SE2d 685) (1986) (no implied consent to try an issue when "the parties do not squarely recognize it as an issue in the trial").

As noted above, judicial review of an agency's administrative decision is limited. Although the superior court properly found no present basis for estate recovery, nothing in OCGA § 50-13-19 (h) authorized it to bar DCH from such recovery in the future. Accordingly, we affirm the superior court's initial conclusion that the agency erred in finding estate recovery currently appropriate, but we

reverse the superior court's effort to prevent DCH from pursuing estate recovery at a later date. We make no finding as to whether such a pursuit would be valid or not, only that the issue is not ripe for decision at this time.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 3, 2008 — 

*Thurbert E. Baker, Attorney General, Michelle Townes, Assistant Attorney General*, for appellants.

*Reinhardt, Whitley, Wilmot, Summerlin & Pittman, Bob Reinhardt, Ross H. Pittman III*, for appellee.