295 Ga. 495
FINAL COPY

S13G1127. COOK et al. v. GLOVER.

THOMPSON, Chief Justice.

We granted certiorari in <u>Cook v. Bottesch</u>, 320 Ga. App. 796 (740 SE2d 752) (2013) to consider whether the Court of Appeals properly interpreted 42 USC § 1396p with respect to whether a Medicaid applicant's purchase of an annuity was subject to an asset transfer penalty. In this case, the Georgia Department of Human Services, Family and Children Services ("DFCS") granted appellee Jerry L. Glover's application for Medicaid benefits but imposed a multi-month asset transfer penalty on him pursuant to § 2339 of DFCS's Georgia Economic Support Services Manual (the "Eligibility Manual") due to his refusal to name the State as the remainder beneficiary on an annuity.[1] Glover appealed the penalty to an Office of State Administrative Hearings

---

[1] Glover, an 82-year-old man residing in a Gainesville, Georgia, nursing home purchased an irrevocable, non-assignable, and actuarially sound annuity for himself shortly before applying for Medicaid benefits. In connection with processing his application, DFCS asked Glover to verify that he had named the State of Georgia as the remainder beneficiary on the annuity and Glover refused, claiming that § 2339 was inapplicable to his annuity and in contravention of other provisions of federal law. Thereafter, DFCS approved Glover's application for benefits, but assessed a seven-month transfer of asset penalty against him. The penalty imposed precluded the payment of benefits on Glover's behalf to the nursing home during the penalty period.

Administrative Law Judge ("ALJ") who issued an initial decision reversing the penalty. DFCS thereafter filed a request for agency review by the Georgia Department of Community Health ("DCH"), the state agency responsible for administering Georgia's Medicaid program, and DCH issued a final decision upholding the penalty. Pursuant to OCGA § 50-13-19 of the Administrative Procedure Act, Glover then sought judicial review from the Superior Court of Hall County which affirmed the final agency decision. The Court of Appeals granted Glover's application for discretionary appeal and reversed the superior court, concluding that § 2339 of the Eligibility Manual as applied to Glover was inconsistent with the plain language of the federal Medicaid statute and that pursuant to 42 USC § 1396p (c) (1) (F) and (G), Glover's annuity was not an asset to which the asset transfer penalty would apply. See Cook v. Bottesch, supra. In holding that the penalty did not apply, the Court of Appeals found the federal statutory language was unambiguous and refused to defer to DCH's decision which was based on a contrary interpretation of the statute provided by the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS"), the federal agency charged with administering the Medicaid program.

2

Appellants, David Cook in his official capacity as Commissioner of DCH and Clyde L. Reese in his official capacity as Commissioner of DFCS, appealed to this Court arguing that the Court of Appeals improperly interpreted the annuity section of the Medicaid Act and erred in holding that §2339 as applied to Glover violated federal law. Asserting that the statutory provisions at issue are ambiguous, appellants contend that the Court of Appeals was required to defer to CMS's interpretation of the federal statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 843, n. 9 (104 SCt 2778, 81 LEd2d 694) (1984) (reviewing court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute). Because we find that the federal statutory provisions at issue are ambiguous and the relevant administrative agencies' interpretations thereof are based on a permissible construction of the statutory language,[2] we reverse the Court of Appeals' decision in this case.

Medicaid is a joint federal-state program that provides medical care to needy individuals. See Douglas v. Independent Living Center of Southern

---

[2] This case involves the judicial review of the state administrative agency's decision as well as the federal administrative agency's interpretation of a federal statute upon which the state agency relied.

California, Inc., ___ U. S. ___ (132 SCt 1204, 182 LE2d 101) (2012). As a participant in the Medicaid program, the State of Georgia is required to have an approved state plan for medical assistance which complies with certain requirements imposed by the Medicaid Act as well as with regulations promulgated by the Secretary of Health and Human Services. See Wilder v. Virginia Hosp. Assn., 496 U. S. 498, 502 (110 SCt 2510, 110 LE2d 455) (1990); 42 USC § 1396a (a). As federal administrator of the Medicaid program, CMS is responsible for the approval of state Medicaid plans and for providing statutory interpretation and guidance with respect to Medicaid eligibility and the penalties for noncompliance with Medicaid rules.[3] See Douglas, supra, 132 SCt at 1208.

In Georgia, DCH is the state agency responsible for administering the Medicaid program and is statutorily authorized by the State "to establish such rules and regulations as may be necessary or desirable in order to execute the state plan and to receive the maximum amount of federal financial participation

---

[3] CMS's interpretations of the Medicaid law and regulations are binding on State Medicaid agencies. See CMS State Medicaid Manual, a copy of which can be accessed on the Internet at http://www.cms.gov/Regulations-and-Guidance/guidance/Manuals/Paper-Based-Manuals-Items/CMS021927.html.

available." OCGA § 49-4-142 (a). See also 42 CFR § 431.10. DCH, which issues policies and procedures governing the state's Medicaid program, contracts with DFCS to make Medicaid eligibility determinations. Relevant to this case, federal law requires Georgia's plan for medical assistance to comply with the provisions of 42 USC § 1396p with respect to the transfer of assets by Medicaid applicants. See 42 USC § 1396a (a) (18). Specifically, in assessing an applicant's eligibility for medical assistance under the plan, subsection 1396p (c) requires that the state provide a penalty for the disposal of assets for less than fair market value during a five-year, look-back period. This subsection additionally sets forth rules regarding the assessment of penalties for the transfer of various types of assets, as well as provisions for protecting certain transfers from the penalty. With respect to the treatment of annuities, subsection 1396p (c) (1) (F) specifically requires:

> For purposes of this paragraph, the purchase of an annuity shall be treated as the disposal of an asset for less than fair market value unless –
>> (i) the State is named as the remainder beneficiary in the first position for at least the total amount of medical assistance paid on behalf of the institutionalized individual under this title [42 USCS § 1396 et seq.]; or
>> (ii) the State is named as such a beneficiary in the

second position after the community spouse or minor or disabled child and is named in the first position if such spouse or a representative of such child disposes of any such remainder for less than fair market value.

Next, subsection 1396p (c) (1) (G) provides:

For purposes of this paragraph with respect to a transfer of assets, the term "assets" includes an annuity purchased by or on behalf of an annuitant who has applied for medical assistance with respect to nursing facility services or other long-term care services under this title [42 USCS § 1396 et seq.] unless –

. . .

(ii) the annuity –
(I) is irrevocable and nonassignable;
(II) is actuarially sound (as determined in accordance with actuarial publications of the Office of the Chief Actuary of the Social Security Administration); and
(III) provides for payments in equal amounts during the term of the annuity, with no deferral and no balloon payments made.

CMS has interpreted the interplay between these subsections as requiring that all annuities comply with both (F) and (G) in order to avoid the imposition of a penalty. See CMS, Changes in Medicaid Annuity Rules under the Deficit

6

Reduction Act of 2005, § II.B (July 27, 2006) Letter Enclosure § 6012.[4]  See

also Hutcherson v. Arizona Health Care Cost Containment System Admin., 667

F3d 1066, 1069-1070 (9th Cir. Ariz. 2012).  DCH Policy § 2339, which

comports with the guidance set forth by CMS for determining whether the

purchase of an annuity will be treated as the disposal of an asset for less than

fair market value, thus first requires that the state be named a remainder

beneficiary in accordance with 42 USC § 1396p (c) (1) (F), before examining

the annuity to determine whether it additionally meets the requirements of

subsection (G) that it be actuarially sound.  In this case, Glover disclosed his

annuity, which met the requirements of subsection (G); however, because it did

not comply with the requirement of subsection (F) that the state be named a

remainder beneficiary, he was assessed a transfer penalty.

In reversing DCH's decision upholding the penalty, the Court of Appeals

noted that the CMS interpretation on which it was based, requiring an annuitant

applicant to comply with both 42 USC § 1396p (c) (1) (F) and (G) to avoid the

asset transfer penalty, was partly inconsistent with the court's own reading of

---

[4] A copy of this letter is available at http://downloads.cms.gov/cmsgov/archived-downloads/SMDL/downloads/TOAEnclosure.pdf.

the federal statute.  See <u>Bottesch</u>, 320 Ga. App. at 802-803.  Although agreeing that a plain reading of subsection (F) standing alone clearly required that the state be named a remainder beneficiary of any annuity, the Court of Appeals interpreted subsection (G) to unambiguously remove actuarially sound annuities benefitting Medicaid applicants from the requirements of subsection (F) by removing them altogether from the definition of "assets" with respect to a transfer of assets.  Id.  Concluding that the statutory language was plain and unambiguous and that the intent of Congress with respect to the treatment of annuities under subsections (F) and (G) was thus clear, the Court of Appeals determined that the judicial deference generally afforded an agency's interpretation of a statute under its purview was not warranted with respect to that portion of CMS's interpretation with which the court disagreed.  See <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U. S. at 843, n. 9  ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.");  <u>Christensen v. Harris County</u>, 529 U. S. 576, 588 (120 SCt 1655, 146 LEd2d 621) (2000) (where language is not ambiguous deference to agency interpretation is unwarranted).  See also <u>Handel v. Powell</u>,

8

284 Ga. 550, 553 (670 SE2d 62) (2008) ("While judicial deference is afforded an agency's interpretation of statutes it is charged with enforcing or administering, the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes.").

In reviewing the provisions of the federal Medicaid statute at issue, we disagree with the Court of Appeals' conclusion that the statutory language is plain and unambiguous and the congressional intent clear. Here, 42 USC § 1396p (c) (1) does not indicate whether subsections (F) and (G) are independent requirements each of which must be satisfied to exempt an annuity from the penalty or, alternatively, if the requirement provided in (F) only applies to an annuity when the annuity fails the exception provided in (G). Nor do we find corresponding language in other provisions of the statute to be especially illuminating.[5] As the statute is silent with respect to the relationship between (F) and (G) and Congress has not otherwise directly addressed the precise question at issue, we find the intended relationship between these provisions to be

_____

[5] We note that in reaching different conclusions with respect to the meaning of the statutory sections at issue, both the Court of Appeals and the superior court relied on 42 USC § 1396p (e) as support for their opposing interpretations.

9

ambiguous, at best.[6]

Thus, it is necessary for this Court to determine what deference, if any, should be accorded DCH's decision, and concomitantly, the deference due the CMS statutory interpretation on which DCH's decision was based. "Where statutory provisions are ambiguous, courts should give great weight to the interpretation adopted by the administrative agency charged with enforcing the statute." Schrenko v. DeKalb County School Dist., 276 Ga. 786, 791 (582 SE2d 109) (2003). As the Georgia legislature has charged DCH with developing and implementing the policies necessary to meet Medicaid requirements, we will defer to that agency's interpretation so long as it comports with legislative intent and is reasonable. See Center for a Sustainable Coast v. Coastal Marshlands Protection Committee, 284 Ga. 736, 741 (670 SE2d 429) (2008); Georgia Real Estate Commission v. Accelerated Courses in Real Estate, Inc., 234 Ga. 30, 32-33 (214 SE2d 495) (1975). See also Georgia Dept. of Community Health v. Medders, 292 Ga. App. 439 (664 SE2d 832) (2008) (in case involving Medicaid

---

[6] While CMS's interpretation that the requirements of subsection (F) apply to all annuities has been adopted by at least one federal appellate court, see Hutcherson, 667 F3d at 1069-1070; another has found its guidance on this issue not "entitled to respect" under Skidmore v. Swift & Co., 323 U. S. 134, 140 (65 SCt 161, 89 LE 124) (1944). See Hughes v. McCarthy, 734 F3d 473, 485 (6th Cir. Ohio 2013).

claimant's appeal of DCH decision imposing transfer of asset penalty, Court of Appeals determined it was required to defer to the agency's reasonable conclusion that, under applicable Medicaid regulations, a renounced inheritance constituted the disposal of an asset). Moreover, the level of deference this Court gives state administrative agency decisions interpreting ambiguous statutes is in accord with that identified by the United States Supreme Court in <u>Chevron</u> as appropriate for the judicial review of a federal administrative agency's statutory interpretation. See <u>Chevron</u>, supra at 844 (when reviewing an agency's construction of a statute it administers, the court must give effect to the unambiguously expressed intent of congress; however, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute).[7] Although not directly confronted with a challenge to the validity of

---

[7] "If a statute is ambiguous, and if the implementing agency's construction is reasonable, <u>Chevron</u> requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation. [Cit.]" <u>National Cable & Telecommunications Assn. v. Brand X Internet Svcs.</u>, 545 U. S. 967, 980 (125 SCt 2688, 162 LE2d 820) (2005). "<u>Chevron</u> established a 'presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'" Id. at 982 (quoting <u>Smiley v. Citibank (South Dakota), N.A.</u>, 517 U. S. 735, 740-741 (116 SCt 1730, 135 LE2d 25) (1996)).

CMS's interpretation of the relevant statutory provisions in this case, we nonetheless will consider the reasonableness of CMS's interpretation as adopted by DCH and incorporated in DCH's policy § 2339. Given that the deference Georgia courts accord state administrative agency interpretations is comparable to <u>Chevron</u>-style deference, we find no reason to accord a lesser level of deference to DCH's interpretation.[8]

The Court of Appeals' opinion sets forth a plausible interpretation of subsections (F) and (G) of 42 USC § 1396p (c) (1). However, based on our review of the statutory provisions, we find DCH's interpretation of § 2339,

---

[8] There is some question as to whether the CMS opinion letter in this case actually is entitled to *Chevron*-style deference or only "entitled to respect" if it has the power to persuade. <u>Skidmore</u>, supra, 323 U. S. at 140 ("We consider that the rulings, interpretations and opinions of the [agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."); <u>United States v. Mead Corp.</u>, 533 U. S. 218, 228 (121 S Ct 2164, 150 LE2d 292) (2001) (explaining the <u>Skidmore</u> principle that "[t]he fair measure of deference to an agency . . . has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." (footnotes omitted)). Although the United States Supreme Court refused to extend <u>Chevron</u> deference to "opinion letters" in <u>Christensen</u>, supra, 529 U. S. 576, and federal district courts since have interpreted this to include CMS opinion letters, see <u>Hughes</u>, supra, 734 F3d at 485; <u>Estate of Landers v. Leavitt</u>, 545 F3d 98, 107 (2nd Cir. 2008), we note that in <u>NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.</u>, 513 U. S. 251 (115 SCt 810, 130 LE2d 740) (1995) the Supreme Court applied <u>Chevron</u> deference to an interpretive letter issued by the Comptroller of the Currency interpreting the National Bank Act.

which is consistent with CMS's interpretation of the statute, to be reasonable and entitled to deference. Accordingly, we hold the Court of Appeals erred in finding the language of 42 USC § 1396p (c) (1) to be plain and unambiguous and erred in failing to defer to DCH's decision upholding the transfer of asset penalty in this case. See Pruitt Corp. v. Ga. Dept. of Community Health, 284 Ga. 158, 159 (664 SE2d 223) (2008) ("When an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation of statutes it is charged with enforcing or administering and the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch.").[9]

Judgment reversed. All the Justices concur, except Nahmias and Blackwell, JJ., who concur specially.

---

[9] The decision in Pruitt, supra, is not inconsistent with the holding in this case as alleged in the concurrence. The issue in Pruitt involved DCH's interpretation of the phrase "last approved cost report" as used by, *but not defined in*, its manual on nursing facility policies. 284 Ga. at 158. Unlike the issue in this case which involves a claim that a DCH *policy* is based on an erroneous interpretation of the federal Medicaid statute, the issue in Pruitt only involved a dispute over the common meaning of words used in a DCH manual. See id. Moreover, in Pruitt this Court specifically declined to decide the issue of whether a DCH decision based on a *policy* reflected in its manual would be entitled to judicial deference. See id. at 160. As the propriety of a *policy* adopted by DCH based on an interpretation of the Medicaid statute is at issue in this case, under this Court's precedent, including that recognized in Pruitt, DCH's decision with respect to that policy is entitled to the judicial deference generally given an agency's interpretation of statutes it is charged with enforcing and administering.

13

NAHMIAS, Justice, concurring specially.

Although I believe the majority opinion reaches the right result, I am dubious of its conclusion that the interpretation of the federal Medicaid statute at issue, 42 USC § 1396p, by the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services (CMS), and by the Georgia Department of Community Health (DCH) is entitled to the full measure of judicial deference required by Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837 (104 SCt 2778, 81 LE2d 694) (1984). The CMS interpretation is "contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking," and the United States Supreme Court has said that, normally, "[i]nterpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant Chevron-style deference." Christensen v. Harris County, 529 U. S. 576, 587 (120 SCt 1655, 146 LE2d 621) (2000). Instead, an interpretation contained in an opinion letter is generally entitled only to so-called Skidmore deference, meaning that the agency's

position is "'entitled to respect'" to the extent that it has the "'power to persuade'" the reviewing court. <u>Christensen</u>, 529 U. S. at 587 (quoting <u>Skidmore v. Swift & Co.</u>, 323 U. S. 134, 140 (65 SCt 161, 89 LE 124) (1944)).

Similarly, the DCH interpretation here is contained not in a formal rule but rather in the department's Medicaid policy manual, and this Court has held, consistent with the approach taken federally in <u>Christensen</u>, that it is erroneous for a Georgia court to give the full "deference due a [state] statute, rule or regulation to a term in a departmental manual, the terms of which ha[ve] not undergone the scrutiny afforded a statute during the legislative process or the adoption process through which all rules and regulations must pass." <u>Pruitt Corp. v. Ga. Dept. of Community Health</u>, 284 Ga. 158, 159-160 (664 SE2d 223) (2008). As under federal law, however, under state law an administrative agency's policy reflected in a manual may still be entitled to some degree of judicial deference. See id. at 160 (reserving this question).

It also should be noted that Congress delegated the authority to interpret the federal Medicaid statute only to the federal Department of Health and Human Services. See 42 USC §§ 1302 (a), 1396a (a) (17). It is therefore clear that the Georgia DCH has no authority to contradict any regulations that CMS

2

promulgates. See <u>Wilder v. Virginia Hosp. Assn.</u>, 496 U. S. 498, 502 (110 SCt 2510, 110 LE2d 455) (1990). But it is not clear whether our General Assembly can give DCH the authority to fill silences and resolve ambiguities left by the federal statute and CMS's formal regulations with interpretations to which state courts must defer, particularly where DCH does so in a manual rather than in a rule adopted after notice and comment. See OCGA § 49-4-142 (a) (saying that "[DCH] is authorized to establish such rules and regulations as may be necessary or desirable in order to execute the state plan and to receive the maximum amount of federal financial participation available in expenditures made pursuant to the state plan; provided, however, the department shall establish reasonable procedures for notice to interested parties and an opportunity to be heard prior to the adoption, amendment, or repeal of any such rule or regulation"). I note on this point that all of the decisions of this Court that the majority opinion cites for the proposition that state courts must give "great weight" to state agency interpretations involved interpretations of *state* rather than federal statutes. See, e.g., <u>Center for a Sustainable Coast v. Coastal Marshlands Protection Committee</u>, 284 Ga. 735, 742 (670 SE2d 429) (2008). The only case apparently giving such weight to the interpretation of federal law

3

provided in the DCH Medicaid policy manual was decided by our Court of Appeals before this Court decided Pruitt and cited no state or federal administrative law authority whatsoever. See Ga. Dept. of Community Health v. Medders, 292 Ga. App. 439, 442 (664 SE2d 832) (2008).

I see no need to resolve these complex administrative law questions in this case. In my view, the better reading of 42 USC § 1396p — the whole of the statute, including subsection (e) as well as subsections (c) (1) (F) and (G) — accords with the reading expressed by CMS in its opinion letter and by DCH in its manual that an annuity which complies with (c) (1) (F) must also comply with (c) (1) (G) to avoid an asset transfer penalty. To the extent that ordinary statutory construction leaves any doubt, even applying just Skidmore-type deference, I would resolve the doubt in favor of the interpretation provided by these expert agencies administering this highly complex regulatory scheme. See Estate of Landers v. Leavitt, 545 F3d 98, 107 (2d Cir. 2008) (explaining that, "in cases such as those involving Medicare or Medicaid, in which CMS, 'a highly expert agency(,) administers a large complex regulatory scheme in cooperation with many other institutional actors, the various possible standards for deference' — namely, Chevron and Skidmore — 'begin to converge,'" and

4

noting "the Supreme Court's repeated suggestion that [CMS] interpretations, in particular, should receive more respect than the mine-run of agency interpretations" (citations omitted)).

For these reasons, I concur in the result reached by the majority opinion, but I do not join all of its reasoning.

I am authorized to state that Justice Blackwell joins in this special concurrence.

Decided July 11, 2014.

Certiorari to the Court of Appeals of Georgia – 320 Ga. App. 796.

Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Michelle Townes, Assistant Attorneys General, for appellants.

J. Kevin Tharpe, for appellee.